UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ADVANCED APPLICATIONS SPECIALIST, INC. | * * * | CIVIL ACTION NO. 23-1413 |
| VERSUS | * * | JUDGE: BRIAN A. JACKSON |
| ASPEN SPECIALTY INSURANCE COMPANY | * * | MAGISTRATE: RICHARD L. BOURGEOIS |

**ASPEN SPECIALTY INSURANCE COMPANY'S OPPOSITION TO MOTION TO COMPEL PRODUCTION OF UNDERWRITING**

Aspen Specialty Insurance Company ("Aspen") respectfully files this Opposition to Advanced Applications Specialists, Inc.'s ("Advanced Applications") Motion to Compel ("Motion"), which seeks an order compelling discovery as to Aspen's underwriting. For the reasons discussed herein, the Motion should be denied.

**I.**
**INTRODUCTION**

The instant dispute concerns a disputed claim for coverage under an Aspen Policy arising out of Aspen's investigation of third party damage allegedly caused by Advanced Applications' defective workmanship and Aspen's denial of payment for the claim under the Policy. The issue presented is whether Advanced Applications sustained its burden to warrant an Order compelling production of Aspen's underwriting file. It did not.

Although Advanced Applications urges that underwriting is always relevant to suits between an insured and insurer, that is an over generalization and misstatement of the law. Indeed, Rule 26 requires a case specific analysis to determine how the requested material, here an underwriting file, is relevant to a claim or defense in the case. Within that framework, numerous courts across the nation, including this one, have denied discovery of underwriting where the suit

does not raise an issue involving underwriting, such as to the issuance or existence of a policy. This is because an insurer's decision to issue insurance is distinct from an insurer's decision to deny a claim. Here, there is no dispute as to the issuance or existence of the policy, and not surprisingly in light thereof, Advanced Applications has failed to date in articulating, much less establishing, the relevancy of underwriting to the dispute between the parties. For these reasons discussed in more detail below, Advanced Applications' Motion should be denied.

## II.
## BACKGROUND

**A.    Factual Background.**

It is undisputed that Aspen issued Commercial General Liability & Environmental Exposure Policy No. ER00Q4J22, in effect from February 1, 2022, to February 1, 2023 ("Policy") to named insured, Advanced Applications. The dispute between the parties concerns whether that Policy affords coverage for alleged third party damage caused by Advanced Applications' alleged defective workmanship.

Specifically, in November of 2022, Advanced Applications performed blasting and coating work, a form of industrial corrosion engineering, on a York Refrigeration Chiller, Equipment No. PRF-1601D ("condenser" or "exchanger") owned by Shintech Louisiana, LLC ("Shintech"). In order to prepare the surface of the tube sheets of the condenser for Belzona coating, the metal surface is blasted to remove degraded material. Before blasting the tube sheet, the opening of the tubes are masked with corks to protect the copper tubes, which Advanced Applications did here. The tube sheet is then blasted and coated. Thereafter, Advanced Applications uses a cork extraction method to remove the corks from the opening of the tubes, which is when the damage allegedly occurred here.

Without notice or knowledge of Aspen, Advanced Applications worked cooperatively with Shintech to support the damage claim for purposes of seeking insurance coverage from Aspen under the Policy. At the conclusion of that process, on March 14, 2023 and citing to an August 11, 2017 Master Service Contract between Shintech and Advanced Applications, Shintech formally rejected Advanced Applications' materials and workmanship pursuant to Article 5.3 of the Contract (Rejection of Materials and Workmanship) and called for replacement of the copper tubes of the condenser pursuant to Article 7.1 of the MSA (warranty) at a cost of $350,000. This letter was sent with the knowledge and consent of Advanced Applications for purposes of seeking insurance coverage from Aspen for its defective workmanship. Shintech never filed suit against Advanced Applications, and Advanced Applications and Shintech never entered into a tolling agreement.

A notice of claim under the Policy was sent by Advanced Applications to Aspen on March 15, 2023, seeking coverage for the notice of defective workmanship under its contract with Shintech. Aspen immediately began investigating the claim. Aspen issued an initial reservation of rights letter on April 13, 2023, which was supplemented on June 26, 2023. Aspen denied coverage for defense insofar as no duty to defend is owed under the Policy in the absence of a "suit." Aspen also reserved its rights to deny coverage for indemnity based upon, among other things, the damage to property exclusion, voluntary acts condition, your work/your product exclusions, the contractual liability exclusion, and the professional services exclusion, among other policy provisions. The instant coverage litigation thereafter ensued.

**B.    Procedural Background.**

Advanced Applications filed suit against Aspen[1] for breach of contract and bad faith. Specifically, Advanced Applications alleges that Aspen breached the Policy by failing to afford coverage thereunder for the alleged damage caused by Advanced Applications' alleged defective workmanship.  In addition, Advanced Applications alleges Aspen is liable for bad faith for: (1) not issuing payment and/or making a written offer to settle the property damage claim within thirty days of receipt of Shintech's March 14, 2023 letter; and/or (2) purportedly misrepresenting the Policy by allegedly "asserting provisions and exclusions clauses that are clearly not applicable to AAS's claim" and/or the facts giving rise to the claim.[2]  Aspen admitted to the existence of the Policy and Advanced Applications insured status thereunder, but it denied that the Policy affords coverage for the damage caused by Advanced Applications' defective workmanship and all other allegations of the Complaint in addition to raising affirmative defenses to the claim.[3]

On February 15, 2024, the parties filed a Joint Status Report, which among other topics requested a settlement conference with the Court with the hopes of resolving the case before incurring litigation costs and fees in earnest.[4]  Shortly thereafter, on March 8, 2024, the Court ordered a settlement conference to occur on May 29, 2024.[5]  Despite the intent and purpose of the settlement conference, Advanced Applications served written discovery on Aspen on May 8, 2024. This put the initial deadline to respond as June 7, 2024, approximately one week after the settlement conference.

---

[1]    *See* R. Doc. 1 & R. Doc. 6.
[2]    *See* Excerpt of Advanced Applications' Responses to Aspen's Discovery at Response to Interrogatory No. 16, attached hereto as Exhibit "1".
[3]    *See* R. Doc. 9 at ¶ 20 and generally.
[4]    *See* R. Doc. 13.
[5]    *See* R. Doc. 15.

Following a regretfully unsuccessful settlement conference, Aspen requested a 30-day extension to respond to the discovery, which was agreed to by Advanced Applications.[6] Realizing it needed additional time to finalize its responses and document production, Aspen notified Advanced Applications that it would have the responses and production to it by no later than July 19, 2024, which Advanced Applications likewise agreed to.[7] Aspen produced its written responses, document production, and privilege log to Advanced Applications on July 19, 2024.[8] Despite Advanced Applications' generally reactionary and cantankerous approach to discovery, with it often applying one set of rules to Aspen and another to itself,[9] Aspen worked in good faith towards addressing the issues raised by Advanced Applications, notably resolving all but one. Unfortunately, the Parties could not reach an agreement on underwriting.

Specifically, Advanced Applications requested Aspen produce its "entire underwriting file for the Policy, including but not limited to all Communications, notes, logs and loss runs." During multiple separate discovery conferences, Aspen engaged Advanced Applications in a good faith effort to resolve the discovery dispute, seeking to understand the relationship, if any, of underwriting to the facts at issue in this case and/or whether Advanced Applications could articulate specific documents or issues it would like Aspen to search for in the underwriting file so that undersigned counsel could discuss producing the same with Aspen subject to a protective order to try and amicably resolve the dispute. On each occasion, Advanced Applications declined to substantively discuss the relationship of underwriting, if any, to the claims or defenses at issue

---

[6]  *See* Correspondences, attached hereto as Exhibit "2".

[7]  *See* Correspondence, attached hereto as Exhibit "3". Notably, after agreeing to the extension, Advanced Applications issued a Rule 37.1 Letter, setting a conference for *three days* prior to the new agreed-to deadline. During the conference, it was again confirmed and agreed the responses would be produced on July 19, 2024.

[8]  *See* Aspen's Discovery Responses and Privilege Log, attached hereto as Exhibit "4".

[9]  Although irrelevant to the merits of this discovery dispute, much is made of the timeline for Aspen to respond to discovery. But Advanced Applications, like Aspen, needed more than the initial 30 days to compile its responses to discovery. Aspen granted several extensions, and Aspen ultimately received Advanced Applications' discovery responses approximately 74 days after service of the requests.

in this case, and it declined to identify any specific document or topic it wanted searched for therein, notably stating that it was not looking for the "needle" in the underwriting file but instead wanted the entire bale of hay without discussion.

On December 2, 2024, Advanced Applications filed its Motion, seeking an order compelling Aspen to produce its underwriting file in its entirety. As discussed below, the law and facts of this case warrant denial as Advanced Applications has not and cannot sustain its burden in establishing the relationship, if any, of underwriting to the claims and defenses at issue in this case.

**III.**
**ARGUMENT**

**A.    Advanced Applications' Motion to Produce Aspen's Underwriting File should be Denied.**

Advanced Application's Motion to Compel production of Aspen's underwriting file should be denied.

Rule 26(b)(1) of the Federal Rules of Civil Procedure allows a party to "obtain discovery regarding any nonprivileged matter *that is relevant to any party's claim or defense* and proportional to the needs of the case." (emphasis added). Accordingly, the inquiry of whether to compel production of documents necessarily focuses on the information the contested probe seeks and the relationship of the requested information to the claims and defenses presented in the suit. To sustain its burden, a party moving to compel discovery cannot merely rely on conclusory assertions, but rather must present an analysis to demonstrate which claim(s) or defense(s) to which the information sought is relevant (and how) or explain why the requests are reasonably calculated to lead to the discovery of admissible evidence. *See e.g., Williams v. Jeld-Wen, Inc.*, 17-01366, 2022 WL 509373, at *3-4 (W.D. La. Feb. 18, 2022); *Swoboda v. Manders*, 14-19, 2015 WL

6

1893473, at *2 (M.D. La. Apr. 27, 2015); *Aubin v. Columbia Cas. Co.*, No. 16-290, 2017 WL 5495526, at *6 (M.D. La. Nov. 16, 2017)(denying motion to compel where movant relied on conclusory allegations of relevancy); *Dooley v. Recreation & Parks Commission for the Parish of East Baton Rouge (BREC)*, No. 08-715, 2009 WL 10678949, at *4 (M.D. La. Nov. 5, 2009)(conclusory assertions do not support relevancy for purposes of discovery); *Matter of Magnolia Fleet, LLC*, No. 22-504, 2023 WL 2601450 (E.D. La. Mar. 22, 2023)(conclusory assertions of relevancy without articulating relationship to claim or defense in the suit is insufficient basis to compel discovery).[10]

With this framework in mind, a general understanding of what underwriting is (and is not) is important to the analysis of whether it is discoverable in this case. Underwriting relates to an insurer's decision to issue an insurance policy in the first place, including issues such as the identity of insured(s), the limits to be afforded, risk premium setting, and in the first party property coverage context, it can sometimes include pre-loss insured property inspections or property valuations (not at issue here). The contents can vary by insurer and type of risk insured, but a unifying theme is that underwriting relates to the issuance of the policy in the first place – was an insurance policy issued, to whom and by whom and with what limits, and whether the information provided for purposes of obtaining insurance was truthful and accurate, the misrepresentation of which can invalidate the policy.

Where, as here, there is no dispute as to the issuance and validity of the policy and only a dispute as to coverage under the language of the policy, underwriting is generally found irrelevant and not discoverable. *See e.g., Krantz v. State Farm Fire & Cas. Co.*, No. 15-56, 2016 WL 320148,

---

[10]    *See also, Morris v. Aircon Corp.*, 2016 WL 7665418, at *2 (E.D. Tex. 2016("Aircon was unable to articulate how these potential needs fell within the 'claim or defense' rubric in Rule 26."); *Gardner v. Huott*, 2015 WL 12733406, at *10 (W.D. Tex. 2013); *Castillo v. Bank America, N.A.*, 2013 WL 1239348, at *8 (W.D. Tex. 2013).

at *7 (M.D. La. Jan. 25, 2016); *Phillips v. Hanover Ins. Co.*, No. 14-871, 2015 WL 1781873, at *7 (W.D. Okla. Apr. 20, 2015)(finding underwriting irrelevant in a claim for breach of contract and bad faith that involved no claim of wrongdoing as to the issuance of the policy); *Allstate Ins. Co. v. Ford Motor Credit Co.*, No. 04-1285, 2005 WL 8163677, at *1 (D. N.M. Sept. 9, 2005)(finding underwriting not relevant to coverage dispute or bad faith claim where suit focused on denial of coverage and lacked any claim pertaining to wrongdoing in the issuance of the policy); *Guardado v. State Farm Lloyds and Dion Mckinley*, No. 14-2641, 2015 WL 12724048, at *2 (N>D. Tex. Dec. 21, 2015)(finding discovery order compelling production of underwriting materials unsupported where plaintiffs failed to explain how it was relevant to the claims presented, which did not involve a dispute over the issuance of the policy); *Abek, Inc. v. State Farm Fire & Cas. Co.*, No. 02-2988, 2003 WL 1956292, at *3 (E.D. La. Apr. 22, 2003)(finding plaintiff failed to demonstrate the relevance of underwriting to a bad faith adjustment claim or claim for lost profits); *Milinazzo v. State Farm Ins. Co.,* 247 F.R.D. 691, 702 (S.D. Fla. 2007)(finding underwriting irrelevant where no underwriting issues raised in the case); *Murray v. Universal Prop. & Cas. Ins. Co.*, No. 20-14283, 2021 WL 12305389, at *4 (S.D. Fla. Apr. 27, 2021)(finding that underwriting material that relates to an insurer's decision to issue insurance is distinct and irrelevant to an insurer's decision to deny coverage where a plaintiff fails to make a prima facie showing); *Westfield Ins. Co. v. Icon Legacy Custom Modular Homes*, 321 F.R.D. 107, 114 (M.D. Pa. 2017)(finding underwriting irrelevant and not discoverable in a coverage dispute concerning whether a claim for damage from faulty workmanship was covered by the policy); *MM United Enterprises, Inc. v. AGCS Marine Ins. Co.*, No. 12-3744, 2013 WL 12126235, at *3 (N.D. Tex. June 18, 2013)(finding underwriting discovery not within the scope of permissible discovery in suit involving breach of contract, breach of the duty of good faith and fair dealing, and violations

of the Texas Insurance Code arising out of the claim investigation and refusal to pay the claim under the policy); *Columbia Mut. Ins. Co. v. Kerrville Prof. Properties, Ltd.*, 16-00973, 2017 WL 7805755, at \*2 (W.D. Tex. July 12, 2017).  More plainly, underwriting files are irrelevant and not subject to production in insurance coverage disputes because "[a]n insurer's decision to issue insurance is distinct from an insurer's decision to deny a claim." *Milinazzo v. State Farm Ins. Co.,* 247 F.R.D. 691, 702 (S.D. Fla. 2007).  Moreover, even where underwriting is deemed relevant based upon the specific facts and circumstances of a given case, courts limit production to those aspects that specifically pertain to the issue raised in the case.  *See e.g.*, *Willis v. Allstate Ins. Co.*, No. 13-60, 2014 WL 11515409, at \*2 (S.D. Miss. Apr. 7, 2013)(limiting production from the underwriting file to those portions that referenced the value of the insured property, which was in dispute in the case).

Particularly instructive, in *Krantz v. State Farm Fire & Casualty Company*, this Court denied and protected a defendant from discovery seeking underwriting where underwriting bore no relationship to the facts and issues presented in the case.  *See Krantz v. State Farm Fire & Casualty Company*, 15-56, 2016 WL 320148, at \*7 (M.D. La. Jan. 25, 2016).  In *Krantz*, the plaintiff submitted a claim for coverage under his homeowner's insurance policy following a fire.  *See id*. at \*1.  Although the defendant-insurer sent the plaintiff a letter referencing issuance of payment under the policy, it never actually issued payment, instead taking the position the plaintiff intentionally started the fire, precluding coverage under the policy. *See id*.  As part of discovery, the plaintiff sought to examine the defendant-insurer regarding the policy, practice and procedure for creating and maintaining an underwriting file.  *See id*. at \*7.  However, there was no issue in the case regarding sufficiency coverage or whether the policy was in effect.  *See id*.  Finding that there were no claims or defenses in the litigation concerning the underwriting of the policies at

9

issue, including whether any misrepresentations were made on the policy application, the court found discovery pertaining to underwriting irrelevant. *See id.*

Here, Advanced Applications has not articulated which claim(s) or defense(s) underwriting is relevant to and how, nor could it. There is no claim pertaining to the issuance of the Policy and/or the existence of the Policy. Instead, Advanced Applications' causes of action are for breach of contract and bad faith arising out of Aspen's investigation of damage from Advanced Applications' alleged defective workmanship on a third party's property and Aspen's denial of payment for the claim under the Policy. Neither of those claims involves the underwriting process.

Moreover, conclusory assertions of relevancy premised upon broad overstatements as to the holdings of cases whose outcomes were fact specific does not support Advanced Applications' request here. For example, *Weimar v. Liberty Mutual Insurance Co.* – upon which Advanced Applications heavily relies – is distinguishable and inapplicable. *See Weimar v. Liberty Mutual Insurance Co.*, No. 17-584, 2018 WL 6070344 (M.D. La. Nov. 19, 2018). In *Weimar*, the plaintiffs alleged that a piece of commercial property was damaged as a result of a wind event, causing damage to the roof, gutter and other damages, including but not limited to water intrusion. *See id.* at *1. Suit was originally filed against Liberty Mutual Insurance Company, but West American Insurance Company removed the case to federal court, alleging that it was the proper-party defendant having issued the policy. *See id.* Notably, the plaintiffs filed an amended complaint, naming both companies and alleging specific issues of underwriting relative thereto and the dispute as to the property-party defendant based thereon. *See* Case No. 17-584, R. Doc. 14, First Supplemental and Amending Complaint. Whether based upon that dispute over the identity of the insurer who issued the policy or otherwise, the defendants *did not* dispute the relevancy of the underwriting materials to the case and agreed to their production, which is memorialized in the

10

Court's ruling. Thus, *Weimar* does not stand for the proposition that an underwriting file is always relevant to suits between and insured and insurer. Moreover, the granting of an uncontested motion to compel production of underwriting in a case that directly implicated underwriting issues therein is in no way analogous to the instant dispute. The remaining cases cited by Advanced Applications are equally inapposite.[11]

Simply put, Advanced Applications failed to sustain its burden in establishing that Aspen's underwriting file is relevant to a specific claim or defense at issue in this case, warranting denial of its Motion. Indeed, Advanced Applications has not articulated which claim(s) or defense(s) underwriting is relevant to – and how, nor could it. There is no issue in the case regarding sufficiency coverage or whether the policy was in effect. Instead, Advanced Applications' causes of action are for breach of contract and bad faith arising out of Aspen's investigation of the damage from Advanced Applications' alleged defective workmanship on a third party's property and Aspen's denial of payment for the claim under the Policy. Again, an insurer's decision to issue insurance is distinct from an insurer's decision to deny a claim. Because there are no claims or defenses relating to the issuance of the Policy and the issues in this case all arise from Aspen's

---

[11]    *See Renfrow v. Tedwood Fire & Cas. Ins. Co.*, 288 F.R.D. 514, 517 (D. Nev. 2013)(as the defense objection was premised upon a motion to bifurcate that would render production of underwriting premature and therefore irrelevant, the court rejected defendants' argument insofar as the motion had neither been filed nor granted so as to preclude the discovery); *Trammell Crow Residential Company v. St. Paul Fire & Marine Ins. Co.*, 2013 WL 12124331, at *1-2 (N.D. Tex. Aug. 21, 2013)(finding when the suit concerns issues of the insured's identity and whether the policy is intended to extend coverage to that entity, an underwriting file could be relevant); *Beazer Homes Corp. v. Hartford Fire Ins. Co.*, No. 10-2419, 2012 WL 6210323, at *3-4 (D. S.C. Dec. 13, 2012)(underwriting relevant to determination of intent of the parties as to whether the party was intended to be included as an additional insured, which could not be determined from the four corners of the policy); *Pentair Water Treatment (OH) Co. v. Continental Ins. Co.*, No. 08-3604, 2009 WL 3817600 (S.D. N.Y. Nov. 16, 2009)(the court found discovery of underwriting pertaining to *other* insurance policies relevant based upon the court's finding that the specific defenses raised by the insurer implicated the same); *Lexington Ins. Co. v. Commonwealth Ins. Co.*, 1999 WL 33292943, at *3-6 (N.D. Cal. Sept. 17, 1999)(finding that the intent of the parties at the time of contracting was in dispute and rendered discovery of underwriting permissible as to the limited issue presented and under the applicable law for the interpretation of the policy, which does not apply here); *Intl. Game Technology v. Illinois Natl. Ins. Co.*, No. 16-02792, 2017 WL 5505039 (D. Nev. Nov. 16, 2017)(insured satisfied burden of establishing relevancy of underwriting to specific defenses at issue in the case, including failing to timely disclose pending litigation).

post-issuance decision to deny a claim for third-party property damage, underwriting simply is not relevant herein. Accordingly, Advanced Applications' Motion should be denied.

**B.      Advanced Applications is Not Entitled to Fees or Costs.**

It is only where a motion to compel is granted that a request for an award or reasonable expenses is supported. *See* FED. R. CIV. P. 37. Insofar as the production of Aspen's underwriting file is not supported as delineated above, the request for reasonable expenses should be denied outright. *See* FED. R. CIV. P. 37(a)(5)(B). Instead, the Rule supports that Aspen should be awarded its reasonable expenses for having to respond. *See* id.

Even if this were not the case, however, an award of expenses is not justified in this case. *See* FED. R. CIV. P. 37(a)(5)(A)(i)-(iii). Specifically, Aspen's nondisclosure and objection is substantially justified in light of the abundance of authority cited herein concerning the non-discoverability of underwriting in cases like this one that do not involve a dispute over the issuance or existence of the policy.

Finally, to the extent an award is to be made to Advanced Applications, Advanced Applications did not sustain its burden of establishing entitlement to an award by documenting the appropriate hours expended and hourly rates. As such, the request should be denied outright for failure to afford Aspen reasonable notice of the amount claimed and opportunity to respond thereto.

**III.**
**CONCLUSION**

For these reasons, Advanced Applications' Motion should be denied.

12

Respectfully submitted,

/s/ Victoria E. Emmerling
Victoria E. Emmerling (No. 33117)
Michael B. Swanson (No. 40963)
GIEGER, LABORDE & LAPEROUSE, L.L.C.
701 Poydras Street, Suite 4800
New Orleans, Louisiana 70139
Telephone: (504) 561-0400
Facsimile: (504) 561-1011
Email:  temmerling@glllaw.com
          mswanson@glllaw.com
*Attorneys for Aspen Specialist Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of December, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel.

/s/ Victoria E. Emmerling
VICTORIA E. EMMERLING

13