**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ADVANCED APPLICATIONS SPECIALISTS, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-1413-BAJ-RLB** |
| **ASPEN SPECIALTY INSURANCE COMPANY** | |

**ORDER**

Before the Court is Advanced Applications Specialists, Inc.'s ("Plaintiff") Motion to Compel Responses to Discovery (the "Motion to Compel"). (R. Doc. 30). Aspen Specialty Insurance Company ("Defendant") has filed an Opposition. (R. Doc. 32). Plaintiff has filed a Reply. (R. Doc. 37).

**I.    Background**

On October 3, 2023, Plaintiff filed suit in this Court against Defendant, alleging bad faith and breach of contract claims. (R. Doc. 1). On October 23, 2023, Plaintiff filed its First Amended Complaint for Damages (the "Amended Complaint") bringing the same claims. (R. Doc. 6).

According to the Amended Complaint, Plaintiff was contracted in November of 2022 to perform work on a York Refrigeration Chiller Condenser owned by Shintech Louisiana, LLC (the "Condenser"). The Condenser housed, among other things, a tube sheet (the "Sheet") and copper tubes adjacent to the Sheet (the "Tubes"). Plaintiff alleges it was contracted to coat the Sheet, not the Tubes, with a substance called Belzona. To prevent improper application, Plaintiff installed corks inside the Tubes, coated the Sheet, and then removed the corks. While the corks were being removed, the Tubes were damaged, resulting in a replacement cost of $350,007.00.

Plaintiff sent a Liability Notice of Occurrence/Claim to Defendant on March 15, 2023, and Defendant confirmed its receipt the next day. On May 31, 2023, Defendant replied with a

1

reservation of rights letter that denied Plaintiff's claim based on exclusions within the applicable insurance policy (the "Policy"). Plaintiff alleges Defendant breached its obligations under the Policy and acted in bad faith by (i) sending an untimely reservation of rights letter, (ii) denying coverage after little to no claim investigation, (iii) misrepresenting and misunderstanding the Policy and its exclusions, and (iv) failing to pay any amount within sixty days of its receipt of a satisfactory proof of loss. Plaintiff appears to argue that because it was not specifically contracted to coat the Tubes, the Policy exclusions Defendant used to deny coverage do not apply so that Defendant should have covered the entire cost of replacing the Tubes.

On May 8, 2024, Plaintiff propounded its First Set of Interrogatories and Requests for Production of Documents ("RFP(s)") on Defendant. (R. Doc. 30-1 at 1). RFP No. 8 stated: "Please produce Your entire underwriting file for the Policy, including but not limited to all Communications, notes, logs, reports, and loss runs." (R. Doc. 32-4 at 13). Responses to the discovery requests were initially due on June 10, 2024, but, upon Defendant's request, Plaintiff provided an extension of the deadline to July 8, 2024, and then to July 19, 2024. Defendant provided its initial responses on July 19, 2024, giving the following response to RFP No. 8:

> [Defendant] objects to this discovery request as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. The instant case concerns Plaintiff's request for a determination of whether it is entitled to coverage under the Policy at issue for the damage it caused to the York Refrigeration Chiller Condenser on which it was working. It does not, however, involve any dispute over the underwriting of the Policy. Moreover, the interpretation of an insurance policy is a legal question, and when interpreting the terms and conditions of an insurance policy, the court is to consider only the language of the policy itself. Extrinsic evidence is irrelevant, inadmissible, and may not be used to explain or contradict the parties' intent that is derived from the four corners of the insurance policy itself. Even if extrinsic evidence could be considered, the request is overbroad and unduly burdensome insofar as the request is not limited to underwriting materials pertaining to a specific policy provision, if any, with which Plaintiff takes issue. Similarly, [Defendant] objects to this discovery request as not being reasonably tailored to the needs of this case and served in contravention of the requirement of proportionality embodied in Rule

2

> 26(b)(1) considering the amount in controversy, the burden and expense that [Defendant] will have to incur to respond, and that this burden outweighs its likely benefit. Furthermore, [Defendant] objects to this discovery request as it seeks the production of confidential, non-public business information, financial data, proprietary knowledge and/or trade secrets. [Defendant] will not produce any information or documents containing such information unless and until a confidentiality stipulation and order is agreed to by the parties and entered by the Court. Subject to and without waiving these objections and solely as a gesture of good faith, [Defendant] refers Plaintiff to . . . the terms and conditions for coverage for the matters for which Plaintiff seeks coverage herein and which is at issue in the instant litigation.

(R. Doc. 32-4 at 13, 14). Plaintiff, unsatisfied with this response and others, sought supplemental responses, which Defendant provided on August 22, 2024. (R. Doc. 30-1 at 2). According to Plaintiff, the "supplemental response still did not include the requested underwriting file." *Id.* Neither Plaintiff nor Defendant have filed the supplemental response to RFP No. 8 in the record.

## II.     Law and Analysis

### A.     Plaintiff Complied with Fed. R. Civ. P. 37 But Not Local Rule 37

Fed. R. Civ. P. 37 ("Rule 37") requires a motion to compel to "include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a). A certification "'must accurately and specifically convey . . . who, where, how, and when the respective parties attempted to personally resolve [a] discovery dispute.'" *Persley v. State Farm Mut. Auto. Ins. Co.,* No. 5:19-CV-01685, 2021 WL 1095323, at *2 (W.D. La. Feb. 16, 2021) (citations omitted). The instant Motion is accompanied by a Rule 37 certificate which explains that Plaintiff's counsel "conferred with Victoria Emerling, counsel for [Defendant], by telephone on November 11, 2024, for the purpose of amicably resolving the issues raised in the . . . Motion to Compel . . . without Court action[, but] counsel was unable to resolve the discovery disputes." (R. Doc. 30-2). It is apparent from the certificate "who, where, how, and when" the parties

3

attempted to resolve their discovery disputes. *Persley,* 2021 WL 1095323, at *2 (citations omitted). This Court therefore finds that Plaintiff complied with Rule 37.

However, Plaintiff has not complied with Local Rule 37. Under Local Rule 37, a motion to compel "*must* quote verbatim each . . . request for production . . . to which the motion is addressed, followed immediately by the verbatim response or objection[.]" L.R. 37 (emphasis added). Plaintiff has not provided this Court with RFP No. 8 or Defendant's response; rather, Defendant provided RFP No. 8 and its own initial July 19, 2024 response. (R. Doc. 32-4 at 13). While courts occasionally consider motions to compel when the relevant discovery requests and responses are put before them only by the objecting party, this cannot be done here because Defendant's initial July 19, 2024 responses are not at issue here.

Plaintiff states in its Motion to Compel that Defendant provided supplemental responses on August 22, 2024 that were insufficient, yet no party has submitted these supplemental responses. Defendant has also failed to provide a privilege log as would be required under Fed. R. Civ. P. 26(b)(5)(A) and Local Rule 26(c) in the event Defendant included any privilege objections in its supplemental responses. Because no updated response to RFP No. 8 is before this Court, this Court will deny the Motion to Compel pursuant to Local Rule 37. *See Seastrunk v. Entegris, Inc.*, No. 3:16-CV-2795-L, 2017 WL 6406627, at *10 (N.D. Tex. Dec. 15, 2017) (motion to compel denied for failure to attach copies of discovery requests at issue and any responses or objections); *Contrast Mintex, Inc. v. Pro. Acct. Mgmt., LLC*, No. 3:23-CV-301-B-BK, 2024 WL 1481057, at *3 (N.D. Tex. Feb. 26, 2024) (court considered motion where objecting party filed request at issue "as well as its Second Supplemental Objections and Responses" rather than denying it because movant failed to attach the relevant discovery requests and responses). Nevertheless, this Court provides a review of the issues to aid the parties in their

4

next steps. Should the parties be unable to come to an agreement regarding RFP No. 8, Plaintiff may file a new motion to compel.

   B.   **A Note on the Application of *Weimar* to These Facts**

Plaintiff's counsel claims that because Defendant responded to RFP No. 8 by stating it would "not produce any information or documents containing such information unless and until a confidentiality stipulation and order is agreed to by the parties and entered by the Court[,]" Plaintiff's counsel worked with Defendant's counsel to obtain a protective order "with the understanding that the underwriting file would be produced once the Court approved same." (R. Doc. 37). Citing to *Weimar v. Liberty Mut. Ins. Co.*, Plaintiff concludes that because this Court granted the Joint Motion for Protective Order, Defendant may be compelled to produce the underwriting file. CV 17-584-BAJ-RLB, 2018 WL 6070344, at *2 (M.D. La. Nov. 20, 2018). This Court disagrees and finds that *Weimar* is inapplicable to the instant case.

In *Weimar*, a breach of contract and bad faith case, a defendant stated it "w[ould] produce [its underwriting file] subject to entry of a protective order" after arguing that the request for such was overly broad, unduly burdensome, and sought irrelevant information. *Id*. This Court ordered the defendant to fully respond to the underwriting request "without further objection, after the entry of a protective order[.]" *Id. Weimar* is inapplicable here because the petition in *Weimar* included allegations regarding issues of underwriting, while the petition here does not.

*Weimar* is also inapplicable because Defendant did not promise Plaintiff it would turn over its entire underwriting file in the event a protective order was entered. Defendant stated in its response to RFP No. 8 that it "w[ould] not produce any information or documents containing such [] unless and until a confidentiality stipulation and order is agreed to by the parties and entered by the Court." (R. Doc. 32-4 at 14). This is not the same as stating that it "w[ould]

5

produce [its underwriting file] subject to entry of a protective order[.]" *Weimar*, 2018 WL 6070344, at *2. Beyond this, the subject sentence in this case follows Defendant's objection that RFP No. 8 seeks "the production of confidential, non-public business information, financial data, proprietary knowledge and/or trade secrets." (R. Doc. 32-4 at 14). Considering the context, it appears Defendant was only explaining its standards for turning over confidential information, not promising to provide its underwriting file in the event a joint protective order was approved.

### C.   Plaintiff's Request for the Underwriting File Should be Limited

Parties may obtain discovery "relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26. "Relevance, for the purposes of [Fed. R. Civ. P.] 26(b)(1), is when the request is reasonably calculated to lead to the discovery of admissible evidence." *Williams v. Jeld-Wen, Inc.,* No. 1:17-CV-01366, 2022 WL 509373, at *2 (W.D. La. Feb. 18, 2022) (citations omitted). Plaintiff argues that because "underwriting files typically cover the expected risks covered in the policy and how the insurer interpreted various policy terms[,]" the underwriting file in this case is relevant to (i) how Defendant interpreted the Policy and its exclusions; (ii) Plaintiff's breach of contract and bad faith claims; (iii) what was covered under the Policy; (iv) whether Defendant failed to meet its obligations; and (v) determining the intent of the parties when they entered into the Policy. (R. Docs. 30-1; 37).

Defendant argues Plaintiff's statements regarding the relevance of the underwriting file are conclusory and cannot support its Motion to Compel. (R. Doc. 32). Defendant also argues that because an underwriting file "relates to an insurer's decision to issue an insurance policy in the first place," it has no relevance to bad faith and breach of contract claims. (R. Doc. 32 at 7). In other words, it is Defendant's position that when there is no dispute in a case regarding the issuance and validity of a policy, and only a dispute as to coverage, underwriting is irrelevant.

6

Defendant also points out that "even where underwriting is deemed relevant . . . courts limit production to those aspects that specifically pertain to the issue raised in the case." (R. Doc. 32 at 9). Considering the case law below, this Court finds that a narrowing of RFP No. 8 is advised. Rather than simply seeking the entire underwriting file, RFP No. 8 should be directed to a specific topic or category of documents, tailored specifically to address the relevance objections brought by the defense.

In *Tim Long Plumbing, Inc. v. Kinsale Ins. Co*., the Eastern District of Texas found that a Plaintiff properly alleged that an underwriting file was relevant where the Plaintiff noted—just like Plaintiff here—that "an underwriting file typically covers the expected risks covered in the policy and how the insurance company interpreted the various policy terms." No. 4:20-CV-00042, 2020 WL 6559869, at *4 (E.D. Tex. Nov. 9, 2020) (citations and quotations omitted). The court, however, also held that while the plaintiff "identified a specific reason as to why the underwriting file [wa]s relevant to the case[,]" it had not "claim[ed] that the *entire* underwriting file [wa]s relevant." *Id.,* at *5 (emphasis added). Thus, the court only compelled the defendant to "produce those portions that reference[d the d]efendant's evaluation of what risks it expected to cover in the policy and how it interpreted the various policy terms." *Id* (citation omitted).

Faced with a similar argument that portions of the underwriting file may reveal how Defendant interpreted its exclusions, and offered little explanation[1] for why the entire file is relevant, this Court aligns its reasoning with the court in *Tim Long*. While this Court will not compel a response at this time, it notes that Plaintiff would be entitled to portions of the

---

[1] Plaintiff relies on string cites in discussing the relevance of the entire underwriting file. This is not enough because relevance is specific to the facts of a case. *See Mario Guardado & Maria Guardado v. State Farm Lloyds & Dion Mckinley*, No. 3:14-CV-2641-P (BF), 2015 WL 12724048, at *2 (N.D. Tex. Dec. 21, 2015) ("While the material sought in this [underwriting] request may have been relevant in [another] lawsuit, and may also be relevant in this lawsuit for similar reasons, the Court is not able to make that determination, because Plaintiffs have provided no explanation as to the relevance of the sought materials to the subject matter of this lawsuit. The fact that the Court granted the same request in a different lawsuit cannot be the sole basis for relevance [here].").

7

underwriting file that concern Defendant's evaluation of what risks it expected to cover in the Policy and how it interpreted: (i) the Products-Completed Operations Hazard Clause, (ii) the Professional Services Exclusion, (iii) the Contractual Liability Exclusions, (iv) the Damage to Property Exclusion, (v) the Voluntary Acts Condition, (vi) the Your Work/Your Product Exclusions, and (vii) all other exclusions asserted in the Defendant's Answer.[2] *See Trammell Crow Residential Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:11-CV-2853-N, 2013 WL 12124331, at *2 (N.D. Tex. Aug. 21, 2013) (underwriting files relevant to "interpretations of the exclusions asserted in the 'Additional Defenses' section of its Original Answer.").

      Other portions of the underwriting file appear to be irrelevant, based on the facts now before this Court, and Plaintiff should narrow RFP No. 8 accordingly. *See MM United Enter., Inc. v. AGCS Marine Ins. Co*., No. 3:12-CV-3744-L, 2013 WL 12126235, at *2–3 (N.D. Tex. June 18, 2013) (Denied motion to compel insurer's underwriting guidelines when causes of action, such as breach of contract, arose out of an insurer's investigation and refusal to pay because causes of action did not involve insurer's "due diligence during the underwriting process"); *See also Krantz v. State Farm Fire & Cas. Co*., No. CA 15-56-JJB-RLB, 2016 WL 320148, at *7 (M.D. La. Jan. 25, 2016) (court struck deposition topic regarding "the policy, practice, and procedure for creating and maintaining an underwriting file" where claims and defenses only concerned whether the plaintiff's claim was properly adjusted in good faith after insurer denied coverage).

---

[2] Defendant has neither acknowledged nor denied the existence of such information in its underwriting file. *Contrast Columbia Mut. Ins. Co. v. Kerrville Pro. Properties, Ltd*., No. SA-16-CA-00973-XR, 2017 WL 7805755, at *2 (W.D. Tex. July 12, 2017) (motion to compel denied where insurer stated "underwriting file does not contain information regarding [insurer]'s construction or understanding of the subject exclusion").

**III.     Conclusion**

**IT IS ORDERED** that the Motion to Compel (R. Doc. 30) is **DENIED WITHOUT PREJUDICE**. Any revised RFP in accordance with this order shall be issued within 7 days and will be deemed timely. Should Defendant withhold any documents in response to that revised RFP on the basis of privilege, Defendant shall identify, in a privilege log attached to its response, any documents withheld as privileged in compliance with Fed. R. Civ. P. 26(b)(5)(A) and Local Rule 26(c). Should a new motion to compel regarding the issues herein be filed, it must comply with Fed. R. Civ. P. 37 and Local Rule 37.

Signed in Baton Rouge, Louisiana, on February 10, 2025.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**